UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO: 1:02CV-113-R

UNITED STATES OF AMERICA                                           PLAINTIFF

v.

TWENTY-ONE THOUSAND, SEVEN HUNDRED                                 DEFENDANTS
SEVENTY-ONE DOLLARS ($21,771.00), et al.

### MEMORANDUM OPINION

This matter comes before the Court on the Plaintiff's Motion to Dismiss the claims of Defendants David and Ann Chapman pursuant to Federal Rules of Civil Procedure ("FRCP") 56 and 12(b)(6) (Docket #56). The Defendants have responded (Docket #62), and the Government has replied to that response (Docket #68). This matter is now ripe for adjudication. For the following reasons, the Plaintiff's Motion to Dismiss is **DENIED**.

### BACKGROUND

This claim originates from a civil forfeiture action filed the by the United States of America ("Government") against $28,757.80 seized from a Merrill Lynch Cash Management Account on September 27, 2002, in the name of the Defendants. The Defendants, David and Ann Chapman ("Chapmans"), have made a claim to that money, asserting that they are possessors and owners of the funds and that they are innocent owners. In their motion to dismiss the Government argues that the Chapmans cannot establish that they are innocent owners, do not have standing to challenge the forfeiture, and cannot recover the funds because they acted in a willfully blind manner with regard to the nature of the currency.

This particular claim arose from an investigation into the alleged illegal actions of Larry and Michelle Deaton ("Deatons"), the latter of whom is the daughter of the Defendants. The

Deatons had processed many loans for prospective home buyers, who were unable to obtain mortgages, by using false information on the loan applications and altering loan documents to illegally secure financing. Mortgage companies, believing the false information submitted to them, approved home loans on false pretenses. The Deatons would then process the loan proceeds into various bank accounts.

The Deatons opened one of their accounts, entitled the "Forest Park Land Title" ("Forest Park") account, with the help of the Chapmans. The bank record at Citizens First Bank shows that David Chapman ("Chapman") served as the "President" while Ann Chapman served as the "Vice President." Chapman later admitted that he helped his daughter Michelle open a checking account at Citizens First Bank in the name of Forest Park so that she could "pay her bills." However, Chapman testified in his grand jury testimony that he knew that FBI Agent Dick Glenn ("Glenn") had been investigating the Deatons and that had also been a reason why he helped Michelle open the account. In addition, Chapman testified that he knew nothing about the Forest Park account, and that he only wanted to help his daughter Michelle open an account. This account was later used by Michelle to defraud funds from Claimant Access Mortgage Loan Company.

On April 1, 2002, Claimant Access Mortgage wire transferred $75,743.48 into the Forest Park account opened by Chapman for his daughter. On April 3, 2002, a check written on the Forest Park account for $50,000 was made payable to Jimmy Hollis and supposedly signed by Chapman, though he later admitted that he did not sign the check. That check was later endorsed by Hollis to pay "Michelle Deaton or David Chapman for deposit only." The $50,000 was eventually deposited into a Merrill Lynch Cash Management Account held by David and Ann

Chapman. Chapman claims that the money was a repayment of a loan that he gave his daughter Michelle in the amount of $43,016.88 on March 4, 2002 because Agent Glenn had attached and seized the funds from all of her accounts. Chapman later admitted that he did not know Jimmy Hollis.

On May 9, 2002, the Government seized $28,757.80 from the Merrill Lynch account of the Defendants, which the Government argues represents the remainder of the $50,000.00 that the Deatons stole from Access Mortgage. In October 2004, the Deatons pled guilty to criminal wrongdoing and admitted that the $28,757.80 represented proceeds that were obtained through the result of illegal conduct. However, on December 9, 2002, the Chapmans filed a verified statement of interest on the money seized by the Government from their Merrill Lynch account, claiming that they are the "true and bona fide sole owners" of the money and that they are entitled to its possession. The Government denies those claims, and counters asserting that the Chapmans lack standing to claim the money, and that the money should be returned to Claimant Access Mortgage.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957)).  Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss.  *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).  A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

Under 18 U.S.C. §983 (d), in a civil forfeiture initiated by the Government, an "innocent owner" shall not lose his/her interest in the property.  However, one who claims such a defense has the burden of proving that he/she is an innocent owner by the preponderance of the evidence.  The Government argues that the property interest in the money vested to the United States at the time of the underlying illegal transaction, and that the Chapmans do not have standing under Article III of the United States Constitution to bring this claim because they did not have a legal interest in the property. *United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987).  The Government contends that the Chapmans must have a legal interest in the property to assert an "innocent owner" defense.  *Id*.  The Government also asserts that in order to claim an innocent owner defense, the Chapmans must properly assert it.  Additionally, the Government argues that even if the Chapmans do have standing, meaning an interest in the money, they are not innocent owners under §983(d), and therefore have no claim to the money.  The Court will address the standing and innocent owner arguments separately.

### *Standing*

The Government claims that 21 U.S.C. §881(h) gave the United States the forfeiture

4

interest at the time of the transaction and that the Chapmans never had a legal interest in the money because the interest vested to the Government. Further, the Government asserts that the Chapmans were unsecured creditors at the time of the transaction, and that unsecured creditors cannot legally own the above-mentioned property to give them standing. However, in contrast to the argument of the Government, 21 U.S.C. §881(h) deals with forfeitures involving a controlled substance and the funds used from dealing in controlled substances to purchase property, and therefore does not apply to the instant matter.

As mentioned, the Government also argues that the Chapmans do not have standing because they are unsecured creditors and cannot "own" the property. The Chapmans counter stating that an unsecured creditor can challenge a forfeiture, and so long as they show they have a possessory interest in the property they have standing to bring the forfeiture claim. The Defendants cite *U.S. v. $3,000 in Cash and All Monies from Certain Bank Accounts*, where the Court noted that an unsecured creditor who had a possessory interest in seized property could challenge the forfeiture. *U.S. v. $3,000 in Cash and All Monies from Certain Bank Accounts*, 906 F. Supp. 1061, 1069 (E.D.VA 1995). Both the Chapmans and the Government also cite *U.S. v. Cambio Exacto, S.A.*,, where the Second Circuit Court of Appeals held that injury was the key requirement for establishing standing under Article III. *U.S. v. Cambio Exacto, S.A.*, 166 F.3d 522, 528 (2nd Cir. 1999). The Court went on to explain that a possessory owner suffers an injury when his/her property is seized. *Cambio Exacto, S.A.*, 166 F.3d at 527.

In the instant matter, when the Government initiated its forfeiture claim and seized the assets from the Merrill Lynch account, the money itself was in the possession of the Chapmans, as both the title of the account and the checks written from the account demonstrated their

possessory interest.  Further, the Merrill Lynch account was not the account set up by the Chapmans for the purpose of funneling the money of their daughter.  The Forest Park account served that purpose, whereas the Merrill Lynch account was a personal account for the Chapmans.  Though questions remain as to how the money got into the account and whether the Chapmans rightfully possessed the money, they still did possess the money at the time the Government seized it from their account.  This seizure would qualify as an injury sufficient enough to warrant standing for the Chapmans to bring their claim to the money under Article III.  Therefore, the Chapmans have standing to bring this claim.

### *Innocent Owner*

The Government argues that even if the Chapmans have standing to bring their claim for the seized assets, they are not innocent owners within the meaning of Title 18 U.S.C. §983 (d).  Though the Government contends that the Chapmans did not properly raise the "innocent owner" defense because they did not specify this in their response, the Chapmans did claim to be "bonafide purchasers," which is required to have a successful innocent owner defense.  The Court will therefore read the bonafide purchaser argument by the Defendants as asserting the innocent owner defense.

The Chapmans claim that their interest in the property took place before the conduct giving rise to the forfeiture took place, while the Government argues to the contrary.  The transaction that gave rise to the forfeiture in this matter occurred when the Deatons used false pretenses to secure the loan from Access Mortgage.  As such, the illegal transaction that included the funds in question took place *before* the Chapmans had the $50,000.00 transferred into their Merrill Lynch account.  Accordingly, 18 U.S.C. §983 (d)(3)(A) applies to this matter.

§983 (d)(3)(A) states in pertinent part:

(3)(A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property--
(i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

In looking at the statements of Chapman during his testimony before the grand jury as well as the affidavit submitted by Chapman after his testimony, a factual dispute exist as to whether or nor the Chapmans qualified as innocent owners under the statute. As mentioned *supra*, the Chapmans must only prove by a preponderance of the evidence that they meet the innocent owner defense. The standard of §983 (d)(3)(A) requires that an innocent owner "did not know and was reasonably without cause to believe that the property was subject to forfeiture." Here, the evidence offered by the Chapmans, though at times inconsistent, is in contrast with the evidence provided by the Government.

Specifically, in looking at the testimony of Chapman, though the facts indicate that he was aware that FBI Agent Glenn was investigating his daughter for some reason and that Michelle's funds were seized by the Government whenever she opened an account, he later challenges these statements in his affidavit. When asked by the Government why he did not pay his daughter's bills directly rather than open an account for her under the name of Forest Park, Chapman does not give a clear answer that in any way explains his acts, but he does explain that he gave her the money to pay her bills, not to help her defraud loan companies. Additionally, though Chapman could have arguably suspected illegal activity concerning the funds because of the way he received the check for $50,000 from his daughter through false signatures and

7

unknown endorsements, a finder of fact may determine that he was indeed both a bonafide purchaser, and that he did not know about the circumstances surrounding the Deatons' activities. These factual disputes could allow a jury to find that Chapman may not have reasonably believed or in fact knew that the money he would receive from his daughter that filtered through the Forest Park account was subject to forfeiture.  As such, the issue as to whether the Chapmans were not innocent owners under 18 U.S.C. §983 (d) should go before the finder of fact.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss is **DENIED**.

An appropriate order shall issue.