UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO: 1:02CV-113-R

UNITED STATES OF AMERICA                                                                  PLAINTIFF

v.

TWENTY-ONE THOUSAND, SEVEN HUNDRED                                      DEFENDANTS
SEVENTY-ONE DOLLARS ($21,771.00), et al.

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docket #57). The Plaintiff has responded (Docket #61), and Access Mortgage Corporation, as an interested outside party, has filed a memorandum in opposition to the Defendants' motion (Docket #62). The Defendants have replied to the response by the Government (Docket #69). This matter is now ripe for adjudication. For the following reasons, the Defendants' Motion for Summary Judgment is **DENIED**.

## BACKGROUND

This claim originates from a civil forfeiture action filed the by the United States of America ("Government") against $28,757.80 seized from a Merrill Lynch Cash Management Account on September 27, 2002, in the name of the Defendants. In their motion for summary judgment, the Defendants, David and Ann Chapman ("Chapmans"), argue that they are entitled to the seized money, asserting that they are possessors and owners of the funds and that they are innocent owners. In its response the Government contends that the Chapmans cannot establish that they are innocent owners. Interested party Access Mortgage Corporation ("Access Mortgage") claims that the Chapmans are not entitled to the money because they had been deceived by false pretenses, and therefore, the money should return Access Mortgage.

This particular claim arose from an investigation into the alleged illegal actions of Larry and Michelle Deaton ("Deatons"), the latter of whom is the daughter of the Defendants. The Deatons had processed many loans for prospective home buyers, who were unable to obtain mortgages, by using false information on the loan applications and altering loan documents to illegally secure financing. Mortgage companies, believing the false information submitted to them, approved home loans on false pretenses. The Deatons would then process the loan proceeds into various bank accounts.

The Deatons opened one of their accounts, entitled the "Forest Park Land Title" ("Forest Park") account, with the help of the Chapmans. The bank record at Citizens First Bank shows that David Chapman ("Chapman") served as the "President" while Ann Chapman served as the "Vice President." Chapman later admitted that he helped his daughter Michelle open a checking account at Citizens First Bank in the name of Forest Park so that she could "pay her bills." However, Chapman testified in his grand jury testimony that he knew that FBI Agent Dick Glenn ("Glenn") had been investigating the Deatons and that had also been a reason why he helped Michelle open the account. In addition, Chapman testified that he knew nothing about the Forest Park account, and that he only wanted to help his daughter Michelle open an account. This account was later used by Michelle to defraud funds from Access Mortgage.

On April 1, 2002, Access Mortgage wire transferred $75,743.48 into the Forest Park account opened by Chapman for his daughter. On April 3, 2002, a check written on the Forest Park account for $50,000 was made payable to Jimmy Hollis and supposedly signed by Chapman, though he later admitted that he did not sign the check. That check was later endorsed by Hollis to pay "Michelle Deaton or David Chapman for deposit only." The $50,000 was

eventually deposited into a Merrill Lynch Cash Management Account held by David and Ann Chapman. Chapman claims that the money was a repayment of a loan that he gave his daughter Michelle in the amount of $43,016.88 on March 4, 2002 because Agent Glenn had attached and seized the funds from all of her accounts. Chapman later admitted that he did not know Jimmy Hollis.

On May 9, 2002, the Government seized $28,757.80 from the Merrill Lynch account of the Defendants, which the Government argues represents the remainder of the $50,000.00 that the Deatons stole from Access Mortgage. In October 2004, the Deatons pled guilty to criminal wrongdoing and admitted that the $28,757.80 represented proceeds that were obtained through the result of illegal conduct. However, on December 9, 2002, the Chapmans filed a verified statement of interest on the money seized by the Government from their Merrill Lynch account, claiming that they are the "true and bona fide sole owners" of the money and that they are entitled to its possession. The Government denies those claims, and counters asserting that the Chapmans lack standing to claim the money, and that the money should be returned to Claimant Access Mortgage.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In a companion opinion issued by this Court in "Denying" the Government's Motion to Dismiss the claims of the Chapmans concerning the disputed $28,757.80, the Court determined that the innocent owner issue within the meaning of 18 U.S.C. §983(d) was a jury issue. The Court held that the transaction that gave rise to the forfeiture in this matter occurred when the Deatons used false pretenses to secure the loan from Access Mortgage. As such, the Court

4

determined that the illegal transaction that included the funds in question took place *before* the Chapmans had the $50,000.00 transferred into their Merrill Lynch account. Accordingly, the Court applied 18 U.S.C. §983 (d)(3)(A), which states in pertinent part:

> (3)(A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property--
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

The Court, in looking at the statements of Chapman during his testimony before the grand jury and his subsequent affidavit, determined that the innocent owners defense issue should be before the finder of fact. Under §983 (d)(1), the Chapmans must prove by a preponderance of the evidence that they meet the innocent owner defense, which includes being a bonafide purchaser that the Chapmans claim they were at that time. Further, the standard of §983 (d)(3)(A) requires that an innocent owner "did not know and was reasonably without cause to believe that the property was subject to forfeiture." Here, the evidence is in dispute as to whether or not Chapman knew of the fraudulent activities of his daughter.

Specifically, in looking at the testimony of Chapman, the Court found that the facts indicate although Chapman was aware that FBI Agent Glenn was investigating his daughter for some reason and that Michelle's funds were seized by the Government whenever she opened an account, he later clarified his position in his affidavit, asserting that he was loaning her money to pay her bills. When asked by the Government why he did not pay his daughter's bills directly rather than open an account for her under the name of Forest Park, though Chapman does not give a clear answer that in any explains his acts, he nonetheless reemphasises that he was paying

5

her bills.  Additionally, though Chapman could have arguably suspected illegal activity concerning the funds because of the way he received the check for $50,000 from his daughter through false signatures and unknown endorsements, he may also have not known about the origin of the money or the intent of his daughter.  These disputed facts could allow a jury to find that Chapman did not reasonably believe or in fact know that the money he would receive from his daughter that filtered through the Forest Park account was subject to forfeiture.  As such, this matter should go before the finder of fact.

The motion for summary judgment by the Chapmans must be denied. The question as whether or not the Chapmans were innocent owners under 18 U.S.C. §983(d) shall go before the finder of fact.

## CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **DENIED**.

An appropriate order shall issue.