UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:02CV-113

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

TWENTY-ONE THOUSAND, SEVEN HUNDRED
SEVENTY-ONE DOLLARS ($21,771.00), et. al.                      DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the Court on the Plaintiff's Motion for Reconsideration (Docket #77). The Defendants have responded (Docket #78), and the Plaintiff has replied to that response (Docket #79). This matter is now ripe for adjudication. For the following reasons, the Plaintiff's Motion for Reconsideration is **GRANTED**.

### BACKGROUND

This claim originates from a civil forfeiture action filed the by the United States of America ("Government") against $28,757.80 seized from a Merrill Lynch Cash Management Account on September 27, 2002, in the name of the Defendants. In their motion for summary judgment, the Defendants, David and Ann Chapman ("Chapmans"), argue that they are entitled to the seized money, asserting that they are possessors and owners of the funds and that they are innocent owners. In its response the Government contends that the Chapmans cannot establish that they are innocent owners. Interested party Access Mortgage Corporation ("Access Mortgage") claims that the Chapmans are not entitled to the money because they had been deceived by false pretenses, and therefore, the money should return Access Mortgage.

This particular claim arose from an investigation into the alleged illegal actions of Larry and Michelle Deaton ("Deatons"), the latter of whom is the daughter of the Defendants. The

Deatons had processed many loans for prospective home buyers, who were unable to obtain mortgages, by using false information on the loan applications and altering loan documents to illegally secure financing.  Mortgage companies, believing the false information submitted to them, approved home loans on false pretenses.  The Deatons would then process the loan proceeds into various bank accounts.

The Deatons opened one of their accounts, entitled the "Forest Park Land Title" ("Forest Park") account, with the help of the Chapmans.  The bank record at Citizens First Bank shows that David Chapman ("Chapman") served as the "President" while Ann Chapman served as the "Vice President."  Chapman later admitted that he helped his daughter Michelle open a checking account at Citizens First Bank in the name of Forest Park so that she could "pay her bills." However, Chapman testified in his grand jury testimony that he knew that FBI Agent Dick Glenn ("Glenn") had been investigating the Deatons and that had also been a reason why he helped Michelle open the account.  In addition, Chapman testified that he knew nothing about the Forest Park account, and that he only wanted to help his daughter Michelle open an account. This account was later used by Michelle to defraud funds from Access Mortgage.

On April 1, 2002, Access Mortgage wire transferred $75,743.48 into the Forest Park account opened by Chapman for his daughter.  On April 3, 2002, a check written on the Forest Park account for $50,000 was made payable to Jimmy Hollis and supposedly signed by Chapman, though he later admitted that he did not sign the check.  That check was later endorsed by Hollis to pay "Michelle Deaton or David Chapman for deposit only."  The $50,000 was eventually deposited into a Merrill Lynch Cash Management Account held by David and Ann Chapman.  Chapman claims that the money was a repayment of a loan that he gave his daughter

2

Michelle in the amount of $43,016.88 on March 4, 2002 because Agent Glenn had attached and seized the funds from all of her accounts.  Chapman later admitted that he did not know Jimmy Hollis.

On May 9, 2002, the Government seized $28,757.80 from the Merrill Lynch account of the Defendants, which the Government argues represents the remainder of the $50,000.00 that the Deatons stole from Access Mortgage.  In October 2004, the Deatons pled guilty to criminal wrongdoing and admitted that the $28,757.80 represented proceeds that were obtained through the result of illegal conduct.  However, on December 9, 2002, the Chapmans filed a verified statement of interest on the money seized by the Government from their Merrill Lynch account, claiming that they are the "true and bona fide sole owners" of the money and that they are entitled to its possession.  The Government denies those claims, and counters asserting that the Chapmans lack standing to claim the money, and that the money should be returned to Claimant Access Mortgage.

This Court issued its Memorandum Opinion on the Plaintiff's Motion to Dismiss on February 17, 2006 (Docket #72), denying the motion.  At issue in this motion is whether the Court properly considered the innocent owner defense provided by the Chapmans, in particular whether the Chapmans were bona fide purchasers under 18 U.S.C. §983(d)(3)(A).

## DISCUSSION

This Court previously determined that the Court should analyze the innocent owner defense under 18 U.S.C. §983(d)(3)(A) because the alleged innocent ownership in question could only have taken place after the property was acquired by the Chapmans.  As such, the Court will disregard the motion to reconsider under 18 U.S.C. §983(d)(2)(A), and will address

3

whether or not the Chapmans were bona fide purchasers for value under 18 U.S.C.

§983(d)(3)(A).[1]

The Sixth Circuit Court of Appeals, in *United States v. Campos*, held that general

unsecured creditors "do not fit the traditional definition of 'bona fide purchasers.'" *United*

*States v. Campos*, 859 F.2d 1233, 1238 (6th Cir. 1988). In *Campos*, the father of the defendant

had lent his son money, evidenced by an unsecured promissory note, and the father alleged that

he did not know his son was involved in the illegal activity. *Campos* at 1235-36. The Court

determined that Campos was not a "bona fide purchaser for value" within the meaning of the

statute. This decision, in regards to general unsecured creditors not fitting the definition of a

bona fide purchaser for value, was upheld by a later Sixth Circuit Court of Appeals decision in

*United States v. O'Brien*, 181 F.3d 105 (6th Cir. 1999) (trade creditors and employees made

claims as bona fide purchasers, but the Court held "this court does not allow such unsecured

creditors to do so").

In the instant matter, similar to *Campos*, the Chapmans, the parents of an indicted felon,

have made a claim to funds seized by the government and allege that they are bona fide

purchasers for value. However, like Campos, the Chapmans are general unsecured creditors.

The Sixth Circuit Court has explicitly held that general unsecured creditors cannot qualify as

bona fide purchasers for value. Here, the Chapmans are general unsecured creditors based on

the loan they made to their daughter for $43,016.88. As such, the Chapmans are not bona fide

---

[1] 18 U.S.C. §983(d)(3)(A) requires that in order to assert an innocent defense, the defendant must prove
each element by a preponderance of the evidence. It states: "(3)(A) With respect to a property interest acquired after
the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time
that person acquired the interest in the property--
(i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture."

purchasers for value.  Accordingly, the Chapmans cannot sustain their burden under the 18 U.S.C. §983(d)(3)(A) innocent owner defense because they are not bona fide purchasers for value.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Reconsideration is **GRANTED**. An appropriate order shall issue.